OPINION
{¶ 1} Appellant Bernice Butler appeals from the December 10, 2002, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of appellant's minor children to the Stark County Department of Jobs and Family Services [hereinafter SCDJFS].
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant is the biological mother of Courtney Ball (DOB 8-16-92), Shaunice Butler (DOB 10-01-97) and Deangelo Butler (DOB 7-31-00). On May 7, 2001, the SCDJFS filed a complaint in the Stark County Court of Common Pleas, Juvenile Division, alleging that Courtney, Shaunice and Deangelo were dependent and abused children. The complaint was filed after appellant, on or about May 4, 2001, was arrested on charges of domestic violence and child endangering after she admitted striking Courtney repeatedly with a belt. Pursuant to a Judgment Entry filed on May 7, 2001, the SCDJFS was ordered to take the three children into shelter care custody at once pending further order of the court.
 {¶ 3} A case plan was filed on June 6, 2001. As part of the case plan, appellant was ordered to undergo a psychological evaluation, to enroll in parenting classes at Goodwill, to obtain an evaluation from the HOPE program and to submit to random urinalysis to monitor her substance abuse, and to seek and maintain stable employment.
 {¶ 4} Thereafter, on August 1, 2001, a hearing was held before a Magistrate. As memorialized in a Magistrate's Order filed on the same date, the Magistrate found Courtney to be an abused child and found Shaunice and Deangelo to be dependent children. The Court then proceeded to disposition and granted temporary custody of the children to the SCDJFS.
 {¶ 5} Subsequently, on November 1, 2001, the trial court held a semi-annual review. As memorialized in an entry filed the next day, the trial court found that appellant had completed a drug and alcohol assessment, had obtained part time employment, had submitted to urine screens, and had completed her psychological evaluation. The trial court further found that appellant had scheduled Goodwill parenting classes. Finally, the trial court, in its entry, amended the case plan to require appellant, who had been released from jail after being found guilty of domestic violence and child endangering, to attend anger management classes at Free Space.
 {¶ 6} On February 26, 2002, the SCDJFS filed a Motion to Extend Temporary Custody of appellant's three children to November 4, 2002. The SCDJFS, in its motion, indicated, in part, as follows:
 {¶ 7} "According to the family service worker, the progress which was made on the case plan of the children during the prior period of temporary custody or extended period of temporary custody is: Mother has completed Goodwill, IOP at Quest Recovery Services, and her psychological evaluation.
 {¶ 8} "The worker states that the expectations of family reunification or their permanent placement within this period of extension, if granted, are: Mother will continued [sic] to attend AfterCare at Quest and continue with her anger management at Free Space. She will begin to attend joint counseling with Courtney.
 {¶ 9} "The worker also states that the following must take place during this period of extension, if granted, to accomplish the goal of family reunification or other permanent placement: Mother will continue to work on her case plan objectives. Mother will learn to control her anger and demonstrate newly learned skills."
 {¶ 10} Thereafter, appellant, through counsel, filed a Motion for Immediate Review, arguing that it would be in the childrens' best interests to be returned to appellant. By agreement of the parties, the case was continued until the next scheduled review hearing on March 29, 2002.
 {¶ 11} The trial court, on March 29, 2002, held the annual review and considered the pending motions to extend temporary custody and for immediate review. Pursuant to an entry filed on April 1, 2002, the trial court approved and adopted the case plan and extended temporary custody of the children to November 4, 2002. The trial court, in its entry, noted that appellant had completed her psychological evaluation, completed Goodwill parenting classes with perfect attendance, and completed the HOPE program. In addition, the trial court found that appellant, who the court noted needed housing, was involved with both Free Space and Quest Recovery Services and was making good progress on her case plan. The next dispositional hearing was scheduled for September 25, 2002.
 {¶ 12} Following the dispositional hearing on September 25, 2002, the trial court, in an entry filed on September 27, 2002, found that although appellant had completed the services requested in her case plan, appellant had "positive drops". For such reason, the trial court terminated appellant's unsupervised visitation with her three children and ordered that all further visitation be supervised. The trial court also ordered that the status quo be maintained until the SCDJFS filed a motion for permanent custody of the three children.
 {¶ 13} Thereafter, on October 4, 2002, the SCDJFS filed a motion seeking permanent custody of appellant's three children. The SCDJFS, in its motion, stated, in part, as follows:
 {¶ 14} "All three children were removed on May 4, 2001, after Courtney was observed with bruises on her which were caused by physical abuse by mother. Mother subsequently pled guilty to domestic violence and child endangering. Courtney was adjudicated abused and Shaunice and Deangelo were adjudicated dependent on August 1, 2001. The children have been in the temporary custody of SCDJFS since their removal.
 {¶ 15} "Mother's case plan included Human Development, Quest, Free Space, Goodwill Parenting, and housing. Mother completed aspects of her case plan. Service providers continued to indicate concerns over Mother's substance use and anger. Mother continues to test positive for marijuana and is currently incarcerated on a Domestic Violence due to continued positive testing. Mother began receiving unsupervised visits, but these were Court ordered to be terminated due to Mother's continued substance use in front of the children, continued use of physical aggression towards the children and incarcerations."
 {¶ 16} A hearing on the motion for permanent custody was held on November 26, 2002. The following testimony was adduced at the November 26, 2002, hearing.
 {¶ 17} At the hearing, Vicki Mitchell, a Family Services worker with the SCDJFS, testified that Courtney, Shaunice and Deangelo were removed from appellant's home on May 4, 2001, and had been in continuous custody of the SCDJFS since such time. When asked why Courtney had been found to be an abused child, Ms. Mitchell testified that appellant "had used a belt and severely abused Courtney, she had bruises over most of her body, she had bruises on her face, her arms, her legs, her bottom, she chased Courtney through the house with the belt." Transcript at 10-11. As a result, appellant was convicted of domestic violence and child endangering and sentenced to jail and then two years of probation. Based on Ms. Mitchell's testimony that the children had been in the custody of the SCDJFS for the past 22 consecutive months, the trial court granted the SCDJFS' request to proceed to the best interest phase of the hearing.
 {¶ 18} During the best interest phase, Ms. Mitchell testified that Courtney was currently undergoing counseling due to physical abuse and that her behavior was improving. Ms. Mitchell testified that Courtney, who was ten years old, had delayed reading and vocabulary skills and had already been held back one grade. According to Ms. Mitchell, Shaunice, who was five years old, was on track both educationally and developmentally. No evaluations of Deangelo had been conducted, although he appeared on track developmentally.
 {¶ 19} Ms. Mitchell also testified that the three children were currently placed together and that they were extremely bonded to one another. According to Ms. Mitchell, the childrens' current placement was "wonderful" and their foster mother "has gone above and beyond_ to help their birth mother." Transcript at 15. Ms. Mitchell also testified that appellant was much more affectionate with the two younger children than with Courtney. While Ms. Mitchell indicated that she thought Shaunice had bonded to appellant and that Deangelo shared a bond with her, she noted that Deangelo, who was only two years old as of the time of the hearing, had lived with his foster mother for 75% of his life.
 {¶ 20} Although appellant's visitation with her children started out supervised, in June of 2002, the visitation became unsupervised. During the first unsupervised visit on June 14, 2002, appellant, according to Courtney, smacked Deangelo ten times on his hand. While appellant did not deny hitting Deangelo, she admitted to only smacking him two times. As a result of the above incident, Courtney had a counseling session with her therapist. At the hearing, Ms. Mitchell testified that Courtney's therapist informed her that "Courtney was saying that if she went back on any visitation with her mother that wasn't supervised that she'd kill herself." Transcript at 18. For such reason, visitation went back to being supervised.
 {¶ 21} Testimony also was adduced at the hearing that appellant, during an overnight visit with the children on August 2, 2002, had allowed a man who the children did not know to sleep in the living room with them. While appellant admitted that the man spent the night, she, according to Ms. Mitchell, indicated that it was someone who she worked with who needed a ride to work the next morning. According to Ms. Mitchell, at times, including the next day, there was no food in appellant's house for the children.
 {¶ 22} Testimony also was adduced that after one visit, Courtney reported that appellant had been smoking marijuana in front of the children. Although she had been ordered by the court to do so, appellant did not submit to random urine screens for several consecutive months during the summer. Ms. Mitchell testified that between June 4, 2002, and the beginning of August, appellant did not drop any urines. After appellant was told that she could not have any more visitation, supervised or unsupervised, with her children until she agreed to submit to urinalysis, her urine tested positive for marijuana on or about August 19, 2002. As a result of the positive urine drop, a probation violation charge was filed against appellant. According to Ms. Mitchell, appellant again tested positive for marijuana right before she went back to jail on the probation violation. Testimony also was adduced that during another weekend visit, appellant grabbed Courtney and slammed her against the wall and "threw her fist back as though she was going to punch her." Transcript at 24.
 {¶ 23} When asked what she felt was in the best interest of the children at this point, Ms. Mitchell responded as follows:
 {¶ 24} "At this point I feel that it is in the best interest of the children to be granted permanent custody to the Agency. It's been a year and a half, myself as well as the foster mother, as well as all the service providers have worked very, very hard with Bernice trying to get her, you know, to pass some issues and she did complete a lot of services, however, she was not able to show, you know, lifestyle changes, she was not able to show that she had learned from the services. There's continued drug use, there's continued physical discipline of the children, there's continued inappropriate men in her life, so at this point, you know, we have no choice but to file for permanent custody." Transcript at 28. Ms. Mitchell further testified that it was in the best interest for the foster mother to adopt the three children.
 {¶ 25} At the hearing Ms. Mitchell also testified that there were no other services that the SCDJFS could provide to facilitate a reunification in the next six months and that there were no suitable relatives available for placement of the three children.
 {¶ 26} At the conclusion of the hearing, the trial court noted for the record that a Guardian Ad Litem report had been filed. The Guardian Ad Litem's report recommended that the motion for permanent custody be granted.
 {¶ 27} As memorialized in a Judgment Entry filed on December 10, 2002, the trial court terminated appellant's parental rights and ordered that permanent custody of Courtney, Shaunice and Deangelo be granted to the SCDJFS. On December 10, 2002, the trial court also issued Findings of Fact and Conclusions of Law.
 {¶ 28} It is from the trial court's December 10, 2002, Judgment Entry that appellant now appeals, raising the following assignment of error:
 {¶ 29} "The trial court erred in granting the motion for permanent custody as the manifest weight of the evidence did not show by clear and convincing evidence that to grant said motion would be in the best interest of the children."
 {¶ 30} This case comes to us on the accelerated calendar. Appellate Rule 11.1, which governs accelerated calendar cases, provides, in pertinent part: (E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11. 1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form. This appeal shall be considered in accordance with the aforementioned rule.
 I {¶ 31} Appellant, in her sole assignment of error, argues that the trial court erred in granting the motion for permanent custody filed by the SCDJFS "as the manifest weight of the evidence did not show by clear and convincing evidence that to grant said motion would be in the best interest of the children." We disagree.
 {¶ 32} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 33} R.C. 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. Such statute provides as follows:
 {¶ 34} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 35} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 36} "(b) The child is abandoned.
 {¶ 37} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 38} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 39} In the case sub judice, at the hearing held on November 26, 2002, Ms. Mitchell testified that appellant's three children had been in the custody of the SCDJFS for the past 22 consecutive months. As noted by this Court in In re: Whipple Children, Stark App. No. 2002CA00406, 2003-Ohio-1101, the Court, therefore, was not required to make a finding that the children could not be returned to appellant within a reasonable time. On such basis, the trial court granted the agency's request to move directly to the best interest of the children pursuant to R.C.2151.414(B)(1)(d).
 {¶ 40} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 41} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 42} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 43} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 44} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 45} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 46} In the case sub judice, at the November 26, 2002, hearing, Ms. Mitchell testified that, despite attempts to work with appellant over a period of a year and a half, appellant was not able to remedy her problems. As is set forth in detail in the statement of facts above, testimony was adduced that appellant's three children have been placed together for all except the first couple of days after their removal from appellant's home on May 4, 2001, and that the children are extremely bonded to one another. With the exception of Courtney, who is somewhat behind academically, the children are on track developmentally and/or educationally. When asked about their current placement, Ms. Mitchell responded that the children were "currently placed in a wonderful foster home." Transcript at 15. Ms. Mitchell also testified that she thought it was in the childrens' best interest to be adopted by their foster mother, and that it was in the childrens' best interest for the court to grant permanent custody to the SCDJFS. As is stated above, during her testimony, Ms. Mitchell noted that Deangelo had been in his foster home for 75% of his life.
 {¶ 47} Based on the foregoing, we find that the trial court's finding that the best interests of the children would be served by granting permanent custody to the SCDJFS was not against the manifest weight of the evidence.
 {¶ 48} Appellant's sole assignment of error, therefore, is overruled.
 {¶ 49} Accordingly, the judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed.
By: Edwards, J.; W. Scott Gwin, P.J. and John Wise, J. concur.